**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| THE HILLMAN GROUP, INC., | Case No. 2:19-cv-00209-JRG |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| KEYME, INC., | |
| Defendant. | |

**<u>PLAINTIFF'S MOTION TO DISQUALIFY COOLEY LLP</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 1

        A.      Cooley Has a Longstanding Attorney-Client Relationship with Hillman
                and Minute Key, Serving as General Counsel and Regularly Attending
                Board Meetings ................................................................................................ 1

                1.      Cooley Participated in Strategic Discussions for Prior Patent
                        Infringement Litigation Against KeyMe on the '446 Patent-in-Suit .......... 2

                2.      Cooley Participated in Strategic Discussions for the Defense of an
                        *Inter Partes* Review Petition of the '446 Patent-in-Suit ............................. 3

                3.      Cooley Participated in Strategic Discussions for a Declaratory
                        Judgment Litigation Involving a Child of the '446 Patent-in-Suit ............. 3

                4.      Cooley Was Regularly Updated on Minute Key's Product
                        Development, Patent Acquisition Strategies, Competitive Analysis,
                        ████████████████████████ .......................................................... 4

                        a)      Cooley Received Privileged Information on Another Patent
                                at Issue in This Case: the '179 Patent ............................................... 5

                5.      Cooley Represented Minute Key for Hillman's Acquisition,
                        Continued Its Representation, and Did Not Terminate the
                        Relationship ................................................................................................. 5

        B.      Upon Learning of Cooley's Representation of KeyMe, Hillman
                Investigated the Conflict and Attempted to Resolve It with Cooley ..................... 6

III.    ARGUMENT ...................................................................................................... 7

        A.      Minute Key's Attorney-Client Relationship with Cooley Passed to
                Hillman ............................................................................................................. 7

        B.      Cooley Has an Impermissible Conflict of Interest Under Rule 1.7 Because
                Hillman Is a Current Client of Cooley and Has Not Waived the Conflict ............. 9

                1.      Hillman Is a Current Client ........................................................................ 9

                2.      Cooley Is Adverse to Hillman and Hillman Never Gave Consent ........... 10

        C.      Alternatively, Cooley Has an Impermissible Conflict Under Rule 1.9
                Because Cooley's Representation of KeyMe Is Substantially Related to Its

i

Past Representation of Minute Key and the Confidential Information It Received.................................................................................................... 10

    1.    Cooley's Past Representation of Minute Key Is Substantially Related to Its Current Representation of KeyMe..................................... 11

    2.    Even If Not Substantially Related, There Is a Reasonable Probability Cooley Could Use Confidential Information Against Hillman ............................................................................................... 13

    D.    Disqualification Is the Appropriate Remedy ....................................... 15

IV.    CONCLUSION............................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)................................................................................................ 8

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-CV-72 DF, 2009 WL 10679840 (E.D. Tex. Dec. 30, 2009) .................................... 12

*Eastman Kodak Co. v. Sony Corp.*,
   No. 04-CV-6095, 2004 WL 2984297 (W.D.N.Y. Dec. 27, 2004)............................................ 8

*EON Corp. IP Holdings LLC v. Flo TV Inc.*,
   No. CIV.A. 10-812-RGA, 2012 WL 4364244 (D. Del. Sept. 24, 2012) ........................... 13, 15

*F.D.I.C. v. U.S. Fire Ins. Co.*,
   50 F.3d 1304 (5th Cir. 1995) ................................................................................. 15

*Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*,
   No. 3:10-CV-276-F, 2011 WL 13201855 (N.D. Tex. Sept. 12, 2011)..................................... 9

*Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*,
   No. 2:07-CV-463-CE, 2009 WL 256831 (E.D. Tex. Jan. 6, 2009) ........................................ 10

*Hutton v. Parker-Hannifin Corp.*,
   No. CV H-15-3759, 2016 WL 4140736 (S.D. Tex. Aug. 4, 2016) ........................................ 15

*In re Am. Airlines, Inc.*,
   972 F.2d 605 (5th Cir. 1992) ...................................................................... 7, 11, 13

*In re Dresser Indus., Inc.*,
   972 F.2d 540 (5th Cir. 1992) ......................................................................... 7, 10

*Islander E. Rental Program v. Ferguson*,
   917 F. Supp. 504 (S.D. Tex. 1996) ........................................................... 11, 14, 15

*John Crane Prod. Sols., Inc. v. R2R & D, LLC*,
   No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012) ................................ 8, 9

*Jones v. Rabanco, Ltd.*,
   No. C03-3195P, 2006 WL 2237708 (W.D. Wash. Aug. 3, 2006)........................................... 10

*Lyondell Chem. Co. v. Albemarle Corp.*,
   No. 1:01-CV-890, 2004 WL 7332836 (E.D. Tex. Feb. 23, 2004)............................................ 14

*Rembrandt Techs., LP v. Comcast Corp.*,
   No. CIV.A. 2:05CV443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007) ........................... 7, 10, 15

*Soverain Software LLC v. Gap, Inc.*,
   340 F. Supp. 2d 760 (E.D. Tex. 2004) ..................................................................... 8

*TQP Dev., LLC v. Adobe Sys. Inc.*,
   No. 2:12-CV-570-JRG-RSP, 2013 WL 3731492 (E.D. Tex. July 13, 2013) ......................... 10

*VECC, Inc. v. Bank of Nova Scotia*,
   222 F. Supp. 2d 717 (D.V.I. 2002) ......................................................................... 13

## **OTHER AUTHORITIES**

Local Rule AT-2 ......................................................................................................... 7

Local Rule CV-7 ........................................................................................................ 6

MODEL RULES OF PROF'L CONDUCT r. 1.6 (AM. BAR ASS'N 1983) ............................................ 14

MODEL RULES OF PROF'L CONDUCT r. 1.6, cmt. 3 (AM. BAR ASS'N 1983) ................................. 14

MODEL RULES OF PROF'L CONDUCT r. 1.7 (AM. BAR ASS'N 1983) ............................................ 10

MODEL RULES OF PROF'L CONDUCT r. 1.9 (AM. BAR ASS'N 1983) ............................................ 11

MODEL RULES OF PROF'L CONDUCT r. 1.9, cmt. 3 (AM. BAR ASS'N 1983) ................................. 12

MODEL RULES OF PROF'L CONDUCT r. 1.10 (AM. BAR ASS'N 1983) ...................................... 11, 15

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT r. 1.05 ............................................................ 13, 14

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT r. 1.06 ............................................................ 10, 15

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT r. 1.09 ...................................................... 11, 13, 15

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT r. 1.09, cmt. 4A ..................................................... 12

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT r. 1.15 .................................................................. 10

## I.      INTRODUCTION

Cooley has represented Minute Key Inc., a company acquired by and merged into The Hillman Group, Inc. ("Hillman"), for over eight years, serving as its general counsel. In this role, Cooley provided and received confidential and privileged information on all aspects of Minute Key's singular business: self-service key duplication kiosks. Cooley participated in nearly every Minute Key Board meeting, including those (1) evaluating its prior patent infringement case against KeyMe, Inc. on the same patent and products at issue here; (2) discussing privileged patent prosecution strategies, including for patents at issue here; and (3) involving Minute Key's product development, business strategies, and competition with KeyMe. Cooley continued to represent Minute Key after Hillman acquired it, and after Minute Key subsequently merged into Hillman. Minute Key's attorney-client relationship with Cooley transferred to Hillman and continues to this day, creating an impermissible concurrent conflict of interest. Even if Hillman is considered a former client, Cooley is still conflicted because its prior representation is substantially related to Cooley's representation of KeyMe and because it received confidential information directly relevant to this case. With the case in its infancy, Cooley's loyalty to Hillman and the social interest of enforcing ethics far outweighs KeyMe's choice of counsel.

## II.     BACKGROUND

### A.      Cooley Has a Longstanding Attorney-Client Relationship with Hillman and Minute Key, Serving as General Counsel and Regularly Attending Board Meetings

Cooley has been Minute Key's counsel for over eight years. Declaration of Randall Fagundo (Fagundo Decl.), ¶ 2. Minute Key never had in-house counsel, and instead, Cooley filled that role. *Id.* By 2012, Noah Pittard of Cooley acted as Minute Key's general counsel. *Id.*, ¶¶ 3-4; Ex. 22 at 233:6-8. He participated in nearly every Board meeting since 2012, provided counseling in wide-ranging aspects of law, and was a trusted member and integral part of Minute

1

Key's leadership. Fagundo Decl., ¶ 5. Mr. Pittard received confidential and privileged information about Minute Key's competitor strategies (e.g., against KeyMe), product development, prosecution of two of the patents-at-issue here and their family, and litigations involving one of these patents and related patents (e.g., Fagundo Decl., ¶¶ 4-30), including:

| Case | Patent(s) | Relevance |
|---|---|---|
| *Minute Key v. KeyMe* (D. Minn., 2015 – 2017) | 8,979,446 ('446 patent) 8,634,951 ('951 patent) | '446 patent is asserted against KeyMe in this case; '951 patent is child of '446 patent |
| *Hillman v. Minute Key* (PTAB, 2015 – 2016) | 8,979,446 ('446 patent) | '446 patent is asserted against KeyMe in this case |
| *Hillman v. Minute Key* (S.D. Ohio, 2013 – 2014[1]) | 8,532,809 ('809 patent) | '809 patent is child of '446 patent asserted here (through '951 patent) |

### 1.   Cooley Participated in Strategic Discussions for Prior Patent Infringement Litigation Against KeyMe on the '446 Patent-in-Suit

Minute Key filed a Complaint against KeyMe in 2015, alleging that KeyMe infringed the '446 and '951 patents—the '446 patent is asserted against KeyMe here and the '951 patent is a continuation of the '446 patent. Ex. 23, ¶¶ 6-7, 13, 17; First Am. Complaint (D.I. 30) [hereinafter FAC], ¶¶ 16, 23, 26. In its 2015 Complaint, Minute Key alleged that KeyMe's "Locksmith in a Box" self-service key duplication kiosk infringed the patents, including through sales to 7-Eleven, Rite Aid, and Bed Bath & Beyond—the same product and customers at issue in this case. Ex. 23, ¶¶ 8-9; FAC, ¶¶ 23-24. During the nearly two years that case was pending, Cooley was an active member of Minute Key's Board, regularly participating in discussions about the case. *E.g.*, Fagundo Decl., ¶¶ 10-15; Ex. 12 (Nov. 11, 2015); Ex. 14 (Jan. 27, 2016); Ex. 15 (Apr. 25, 2016); Ex. 16 (Jan. 26, 2017). ███████████████████████████

███████████████████████████████████████████████████

---

[1] The S.D. Ohio Complaint was amended in 2014 to remove patent issues and proceeded on unfair competition claims.

These discussions were highly confidential and included attorney-client privileged

information about the '446 patent, its child patent (the '951 patent), and KeyMe. Fagundo Decl.,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2.      **Cooley Participated in Strategic Discussions for the Defense of an**
        ***Inter Partes* Review Petition of the '446 Patent-in-Suit**

When Hillman and Minute Key were separate companies, Hillman filed an *Inter Partes*

Review Petition seeking to invalidate claims of the '446 patent in May 2015. Fagundo Decl.,

¶ 18. Cooley's Noah Pittard participated in Board meetings involving discussions of confidential

and privileged strategy for defending the '446 patent in this proceeding from May 2015 to

November 2016. *Id.*, ¶¶ 18-19; *see also* Ex. 12 (Nov. 11, 2015); Ex. 16 (Jan. 26, 2017). The

same validity and strategy issues will likely be at issue in this case because the same patent is at

issue (the '446 patent) and KeyMe will inevitably raise invalidity as a defense.

3.      **Cooley Participated in Strategic Discussions for a Declaratory**
        **Judgment Litigation Involving a Child of the '446 Patent-in-Suit**

Minute Key's first-issued patent in the '446 patent family, the '809 patent, issued on

September 10, 2013. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ The dispute with Hillman led to Hillman filing a declaratory

judgment case against Minute Key in October 2013, alleging non-infringement and invalidity of

the '809 patent. Ex. 24, ¶¶ 13, 17. ████████████████████████████████

3



considered Cooley for the case. Ex. 22, 233:6-8; Fagundo Decl., ¶¶ 24-25; Ex. 5. Minute Key

ultimately chose Jones Day. Fagundo Decl., ¶ 25. Cooley continued its role as general counsel,

as later confirmed by the deposition of Randall Fagundo (Minute Key's CEO at the time) in that

litigation, describing Cooley as Minute Key's "general counsel." *Id.*, ¶¶ 3, 25; Ex. 22, 233:6-8.

Throughout the case, Cooley expanded its knowledge of the patent issues by, *inter alia*, Mr.

Pittard participating in Board meetings involving confidential and privileged information about

the Hillman litigation

### 4.    Cooley Was Regularly Updated on Minute Key's Product Development, Patent Acquisition Strategies, Competitive Analysis,

Cooley regularly communicated with Minute Key and participated in its Board meetings,

discussing Minute Key's product development, patent strategies, and competitive analysis.

Fagundo Decl., ¶ 29; *see also id.*, ¶¶ 2-5. Minute Key's sole business was self-service key

duplication kiosks, so all of its correspondence and meetings revolved around these products. *Id.*,

¶ 29.



**a)     Cooley Received Privileged Information on Another Patent at Issue in This Case: the '179 Patent**

**5.     Cooley Represented Minute Key for Hillman's Acquisition, Continued Its Representation, and Did Not Terminate the Relationship**

Minute Key and Hillman resolved their patent dispute in 2018 when Hillman acquired Minute Key. Fagundo Decl., ¶ 31. They announced the acquisition in June 2018, completing it in August 2018. *Id.*; Ex. 25. After the acquisition, Minute Key continued its operations as a wholly owned subsidiary of Hillman. Fagundo Decl., ¶ 31. Hillman fully integrated Minute Key into its operations and continued Minute Key's business with a combined management team. *Id.* Then, in December 2018, Minute Key merged into The Hillman Group, Inc., the plaintiff in this case. *Id.* The operations continued as before with the same employees, buildings, and products. *Id.* Through all of these transactions, Hillman and Minute Key maintained the Boulder, Colorado headquarters with substantially the same employees, selling the same Minute Key branded key duplication kiosks, and with the same intellectual property. *Id.*; *see also, e.g.*, Ex. 26.

Cooley represented Minute Key (1) in Hillman's acquisition of Minute Key, (2) after the acquisition, and (3) after Minute Key merged into Hillman. Fagundo Decl., ¶¶ 31-34. Cooley

remains an approved vendor for legal counsel at Hillman. *Id.*, ¶ 34. Most recently, Cooley

provided legal services for Hillman ███████████ on January 30-31, 2019, more than five

months after Hillman acquired Minute Key and more than a month after Minute Key merged into

Hillman. *Id.*, ¶ 32; Ex. 27. Like past invoices, they were addressed to "Minute Key." Fagundo

Decl., ¶ 32; Ex. 27. When Hillman paid the invoice, Cooley did not object and instead deposited

the check without comment. Fagundo Decl., ¶ 32; Ex. 28.

Before Cooley entered an appearance in this case, Hillman believed Cooley still

represented it. Fagundo Decl., ¶¶ 6-7, 33-34. Cooley has never terminated its attorney-client

relationship with Hillman or Minute Key. *Id.* Nor has it acted in any way inconsistent with its

attorney-client relationship—until representing KeyMe against Hillman here. *Id.* Hillman was

shocked to learn of Cooley's representation of KeyMe here, finding it to violate its trust. *Id.*, ¶ 7.

## B.    Upon Learning of Cooley's Representation of KeyMe, Hillman Investigated the Conflict and Attempted to Resolve It with Cooley

Hillman filed this case against KeyMe on June 3, 2019, alleging that KeyMe infringes,

*inter alia*, the '446 and '179 patents based on at least its "Locksmith in a Box" key-making

kiosks. FAC, ¶¶ 23, 26, 51. Hillman first learned of Cooley's involvement on July 24, 2019,

when a Cooley attorney contacted Hillman's counsel seeking a Local Rule CV-7(h) conference.

Hillman immediately began investigating and notified Cooley of the conflict with a detailed 10-

page letter on August 7, 2019. Ex. 29. Cooley responded in a short letter on August 15, 2019,

disavowing Hillman as a client and contending it has no conflict. Ex. 30. Hillman responded,

correcting factual misstatements in Cooley's letter and requesting details on Cooley's alleged

ethical screen. Exs. 31, 32. The parties met and conferred on August 26, 2019, and exchanged

additional letters. Exs. 33, 34. Cooley refuses to withdraw or to provide any details about what

Hillman confidential documents it maintains in its files.

### III.      ARGUMENT

The Fifth Circuit is "sensitive to preventing conflicts of interest" and applies ethical standards rigorously in motions to disqualify. *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Motions to disqualify are determined under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In the Eastern District of Texas, "[t]he standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in [its] court." Local Rule AT-2. The Court "is not limited to the state's ethical rules but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code." *Rembrandt Techs., LP v. Comcast Corp.*, No. CIV.A. 2:05CV443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007) (citing *In re Am. Airlines*, 972 F.2d at 610).

### A.      Minute Key's Attorney-Client Relationship with Cooley Passed to Hillman

Hillman acquired all of Minute Key in August 2018, making it a wholly owned subsidiary of Hillman. Fagundo Decl., ¶ 31. Upon the acquisition, Hillman fully integrated Minute Key into its operations and continued Minute Key's business together with its pre-existing business, using a combined management team. *Id.* Hillman and Minute Key became members of the same corporate family, operating as a single company. *Id.* Hillman formalized this relationship, merging into a single legal entity on December 28, 2018. *Id.* After the acquisition, Cooley continued to serve as Minute Key's counsel, rendering legal services as recently as January 31, 2019 (after the merger). *Id.*, ¶¶ 31-34. ████████████████

███████████████████████████████████████████████████

████████████████     For conflict purposes, however, Hillman is considered a client as of the completion of the acquisition in August 2018 because Minute Key was a "wholly owned and operationally integrated subsidiary." *Eastman Kodak Co. v. Sony Corp.*, No. 04-CV-6095,

2004 WL 2984297, at *3 (W.D.N.Y. Dec. 27, 2004) (citations omitted) (holding that acquisition and integration of a current client meant that the acquiring entity became a current client).

Minute Key's subsequent merger into Hillman continued that relationship. "[W]hether the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction." *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) (citation omitted). "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). Courts consider such factors as "the extent of the assets acquired, including whether stock was sold, whether the purchasing entity continues to sell the same product or service, whether the old customers and employees are retained, and whether the same patents and trademarks are used." *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 WL 3453696, at *3 (N.D. Tex. Aug. 14, 2012) (citations omitted).

███████████████████████████████████████████████████

████████████████████ From before Hillman acquired it to today, Minute Key (and now Hillman) sells the same products, employs nearly all the same people, maintains the same buildings, customers, and intellectual property, and operates the same business. Fagundo Decl., ¶ 31. The merger itself was in corporate form only and did not substantively change how Hillman operated the acquired Minute Key business. *Id.* Cooley's interactions are in accord. Cooley assisted with the acquisition and provided legal advice afterward. *Id.*, ¶¶ 6, 31-34. Cooley again provided legal advice after the merger and deposited a check from Hillman for payment of its post-merger legal services. *Id.*, ¶ 32; Ex. 28. Cooley never suggested it had a different understanding. Fagundo Decl., ¶¶ 6, 31-34. The practical consequence of the transactions is that

8

Hillman continues to run Minute Key's business under control of new management, transferring the attorney-client relationship to Hillman. *John Crane*, 2012 WL 3453696, at *4.

**B.      Cooley Has an Impermissible Conflict of Interest Under Rule 1.7 Because Hillman Is a Current Client of Cooley and Has Not Waived the Conflict**

**1.      Hillman Is a Current Client**

Cooley has a longstanding relationship with Minute Key that continued after Hillman acquired Minute Key and after they merged. *See* Sections II.A, III.A. █████████████

███████████████████████████████████████████████████

Whether an attorney-client relationship terminates upon completion of a project depends on the purpose of the relationship. *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13201855, at *7 (N.D. Tex. Sept. 12, 2011) (citations omitted). When the purpose of the relationship is for the firm "to be on standby" to provide "legal advice and consultations as needed," an ongoing attorney-client relationship exists even when there are no pending projects. *Id.* That is precisely Minute Key's relationship with Cooley that transferred to Hillman. Fagundo Decl., ¶¶ 2-3, 5-7; Section III.A. For over eight years, Cooley served as Minute Key's general counsel, providing legal advice on a variety of matters, always at the ready. Fagundo Decl., ¶ 2.

Cooley attempts to distance itself from that relationship ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████. Hillman certainly understood its relationship with Cooley continued, listing Cooley as an approved legal service provider (vendor number

█████). Ex. 35; Fagundo Decl., ¶ 34; *see also* Fagundo Decl., ¶¶ 6, 31, 33. Had Cooley intended to end the relationship, it should have "giv[en] reasonable notice" to Hillman and

surrendered its client files. TEXAS DISCIPLINARY R. PROF'L CONDUCT r. 1.15(d) [hereinafter Tex. R.]; *TQP Dev., LLC v. Adobe Sys. Inc.*, No. 2:12-CV-570-JRG-RSP, 2013 WL 3731492, at *2 (E.D. Tex. July 13, 2013) (applying rule to national counsel). Indeed, "an existing attorney-client relationship can definitely continue by implication." *TQP Dev.*, 2013 WL 3731492, at *2. Cooley did nothing to suggest otherwise and continues to maintain untold amounts of client files. *See* Sections II.A.5, II.B; *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 WL 2237708, at *4 (W.D. Wash. Aug. 3, 2006) (maintaining client files supports a continued relationship). Hillman reasonably understood that Cooley represents it. *TQP Dev.*, 2013 WL 3731492, at *2; *Jones*, 2006 WL 2237708, at *4 ("[A] lawyer-client relationship does not terminate easily.").

### 2.   Cooley Is Adverse to Hillman and Hillman Never Gave Consent

A concurrent conflict of interest exists under ABA Model Rule 1.7 if "the representation of one client will be directly adverse to another client." *Rembrandt*, 2007 WL 470631, at *2 (quoting MODEL RULES OF PROF'L CONDUCT r. 1.7 (AM. BAR ASS'N 1983) [hereinafter ABA Model R.]). Cooley's representation of KeyMe in this litigation is clearly adverse to Hillman, and is forbidden absent consent from both clients. *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463-CE, 2009 WL 256831, at *3 (E.D. Tex. Jan. 6, 2009) (citing *In re Dresser*, 972 F.2d at 545); ABA Model R. 1.7(b).[2] Hillman did not give consent, and instead denies such consent. Ex. 29. Cooley has an impermissible conflict.

### C.   Alternatively, Cooley Has an Impermissible Conflict Under Rule 1.9 Because Cooley's Representation of KeyMe Is Substantially Related to Its Past Representation of Minute Key and the Confidential Information It Received

Cooley has an impermissible conflict of interest even if Hillman is a former client. A

---

[2] Texas Rule 1.06 also requires that the two matters be "substantially related." *Rembrandt*, 2007 WL 470631, at *2. The stricter ABA rule applies, *id.*, but even if the Texas rule applied, there is a conflict because the matters are substantially related. *See* Section III.C.1.

conflict of interest with a former client exists if there is either a substantial relationship between the subject matter of the former and current representation or if there is a reasonable risk of improper use of the former client's confidential information. *Islander E. Rental Program v. Ferguson*, 917 F. Supp. 504, 510 (S.D. Tex. 1996); *In re Am. Airlines*, 972 F.2d at 614; ABA Model R. 1.9; Tex. R. 1.09(a). Both tests are met, conflicting all of Cooley because no attorney in the firm "shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so." Tex. R. 1.09(b); ABA Model R. 1.10. For over eight years, Cooley represented Minute Key, serving as its general counsel. In that role, Cooley assisted with and learned confidential and privileged information[3] concerning competition with KeyMe, enforcement of the '446 patent against KeyMe (at issue here), and the '179 patent at issue here.

### 1.    Cooley's Past Representation of Minute Key Is Substantially Related to Its Current Representation of KeyMe

Cooley's representation of Minute Key implicates the "underlying concerns of the substantial relationship test: the duty to preserve confidences and the duty of loyalty to a former client." *In re Am. Airlines*, 972 F.2d at 618 (citation omitted). "The trust a lawyer's duty of loyalty inspires in clients encourages them freely to confide in the lawyer and freely to rely" on their advice. *Id.* Minute Key did just that, consulting Cooley over the last eight years ▉

▉

▉

▉ Cooley is factually wrong and too narrowly interprets "substantially related." *E.g.*, *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2009 WL 10679840, at *2,

---

[3] This information is redacted from Board meeting presentations (Exhibits 2, 4, 6, 8, 10, 13, 18, and 20). Unredacted versions of these exhibits are available for *in camera* review.

8 (E.D. Tex. Dec. 30, 2009) (holding prior representation by a "corporate lawyer" substantially related to patent infringement case). The "substantially related" test "primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person." Tex. R. 1.09, cmt. 4A; *see also* ABA Model R. 1.9, cmt. 3.

Cooley represented Minute Key in a variety of matters and served as its general counsel. Fagundo Decl., ¶¶ 2-3. In its role as general counsel, Cooley's Noah Pittard attended nearly every Board meeting, serving as the Secretary. *Id.*, ¶ 5. The nature of this role meant Cooley was privy to important and confidential issues facing Minute Key over the last eight years, including Minute Key's prior litigation against KeyMe involving the same '446 patent, products, and matters that are at issue in this case. *Id.*, ¶¶ 4-5, 10-17. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████. *Id.*, ¶¶ 10-17; *see* Section II.A.1. Each of these subjects will again be at issue in this case because KeyMe is likely to contest infringement, validity, and what, if any, impact ████████████████████████████████████ has on Hillman's damages or ability to obtain an injunction. Accordingly, this information could be used to Minute Key's disadvantage. *See* Tex. R. 1.09, cmt. 4A; ABA Model R. 1.9, cmt. 3. Cooley was also privy to privileged information on another patent at issue in this case, the '179 patent, ████████████████████████████ ████████████████████████████████████████████████. Other aspects of Cooley's longstanding relationship with Minute Key are also relevant to this case,

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Cooley became intimately familiar with all relevant aspects of Minute Key's business—and its representation of Minute Key is thus substantially related to this case. *See EON Corp. IP Holdings LLC v. Flo TV Inc.*, No. CIV.A. 10-812-RGA, 2012 WL 4364244, at \*4-5 (D. Del. Sept. 24, 2012) (holding longstanding broad representation of client, focusing on corporate and regulatory work, substantially related to patent lawsuit when the attorneys were "generally familiar with [client's] business, and specifically familiar with many aspects of the business, including the technology that is at least partially reflected in the patent at issue" and possibly relevant to validity); *see also VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 721 (D.V.I. 2002) (holding that a firm that "acted as general corporate counsel" meant an "extreme likelihood of" disclosure of relevant and detrimental confidential information). This is particularly true because Cooley had involvement with the same patents, products, and defendant at issue in this case ██████████████████████████████████████████████ ████████████████████████████. Fagundo Decl., ¶ 13. Because the matters are "substantially related," there is an irrebuttable presumption "that relevant confidential information was disclosed" to Cooley. *In re Am. Airlines*, 972 F.2d at 614.

### 2.   Even If Not Substantially Related, There Is a Reasonable Probability Cooley Could Use Confidential Information Against Hillman

Cooley should be disqualified even if its representations are not "substantially related" because it possesses significant confidential information of Minute Key relevant to this case. "Texas Rule 1.09 (a)(2) requires disqualification if the present representation in reasonable probability will involve a violation of Rule 1.05" that prohibits use of a former client's confidential information against former client absent consent or the information becoming

13

public. *Islander*, 917 F. Supp. at 511. "Thus, disqualification is appropriate if confidences were exchanged during [Cooley's] representation of [Minute Key], and those confidences could be used to [Minute Key's] disadvantage in this litigation." *Id.*

"Both the ABA Model Rules and the Texas Rules define 'confidential information' broadly" to include all "information relating to the representation" whether privileged or not. *Lyondell Chem. Co. v. Albemarle Corp.*, No. 1:01-CV-890, 2004 WL 7332836, at *6 (E.D. Tex. Feb. 23, 2004) (citing ABA Model R. 1.6(a); *id.*, cmt. 3; Tex. R. 1.05(a)). The confidential and privileged information Cooley gained, as detailed in Section III.C.1, meet this requirement. This information relates directly to the issues in this case: (1) KeyMe's infringement of the '446 and '179 patents, (2) their validity, (3) damages, and (4) whether KeyMe should be enjoined.

Cooley's knowledge of Minute Key's views and strategy on the strengths and weaknesses of its infringement and validity case against KeyMe on the '446 patent may be used to influence its noninfringement and invalidity defenses. *See* Fagundo Decl., ¶¶ 10-15. Similarly, Cooley's knowledge of the prosecution of the '446 and '179 patents (and their family) and related litigations and USPTO proceedings may also be used to influence its infringement and validity defenses. *See id.*, ¶¶ 4-5, 11, 18-30. ███████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████. Cooley was also privy to Minute Key's litigation strategy, including in its past litigation against KeyMe, which is "at the heart" of its representation of KeyMe here. *Lyondell*, 2004 WL 7332836, at *6. Because Cooley received confidential information from its past representation of Minute Key that is directly relevant here, "there is a reasonable probability that confidential information from the previous representation will be used" in this case such that Cooley should be disqualified. *Hutton v.*

14

*Parker-Hannifin Corp.*, No. CV H-15-3759, 2016 WL 4140736, at *7 (S.D. Tex. Aug. 4, 2016).

### D.    Disqualification Is the Appropriate Remedy

The Court should disqualify Cooley. The Court is to "balance the likelihood of public suspicion against a party's right to counsel of choice," and also consider the challenging party's "reasonable expectations." *Rembrandt*, 2007 WL 470631, at *4 (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). Minute Key (and now Hillman) reasonably expected that their longstanding relationship with Cooley included a duty of loyalty—preventing Cooley from representing its competitor in this nearly-identical case against that competitor. Not disqualifying Cooley here would "raise public suspicion of the legal profession generally, and cause the public to question the extent of an attorney's loyalty to his client and whether information given to an attorney is truly confidential." *Islander*, 917 F. Supp. at 514. These concerns far outweigh KeyMe's choice of counsel, particularly given the infancy of this case.



Cooley also refuses to identify what confidential Hillman and Minute Key documents it maintains. Ex. 34. Regardless, the ABA Model Rules and Texas Rules are clear that conflicts of interest with current and former clients are imputed to the entire firm. ABA Model R. 1.10; Tex. R. 1.06 (b); Tex. R. 1.09(b). Cooley's conflict arises from its own work over the last eight years. An ethical wall "is not the appropriate cure." *EON*, 2012 WL 4364244, at *5.

## IV.    CONCLUSION

Hillman requests the Court enter an order disqualifying Cooley.

15

DATED: September 4, 2019               FINDLAY CRAFT, P.C.

                                       /s/ *Eric H. Findlay*
                                       Eric H. Findlay (Bar No. 00789886)
                                       102 North College Avenue, Suite 900
                                       Tyler, TX 75702
                                       (903) 534-1100
                                       (903) 534-1137 (fax)
                                       efindlay@findlaycraft.com

                                       **Attorney for Plaintiff**
                                       **The Hillman Group, Inc.**

*Of Counsel:*

Christopher P. Isaac (admitted *pro hac vice*)
Ryan P. O'Quinn (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700
(202) 208-4400 (fax)
chris.isaac@finnegan.com
oquinnr@finnegan.com

Gerald F. Ivey (*pro hac vice pending*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000
(202) 408-4400 (fax)
gerald.ivey@finnegan.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 4th day of September, 2019. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

/s/ Eric H. Findlay
Eric H. Findlay

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Plaintiff and counsel for Defendant communicated regarding the relief sought in this Motion on August 26, 2019.  Defendant indicated that they are opposed to the relief sought in this Motion.

/s/  Eric H. Findlay
Eric H. Findlay

17