**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| THE HILLMAN GROUP, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:19-cv-00209-JRG |
| | ) | |
| v. | ) | **REDACTED VERSION** |
| | ) | |
| KEYME, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**KEYME, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
<u>COOLEY LLP</u>**

**Table of Contents**

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     BACKGROUND ......................................................................................... 2

        A.      Cooley's Prior Representation of Minute Key.................................. 2

        B.      The Instant Action Against Hillman ................................................ 3

III.    ARGUMENT .............................................................................................. 4

        A.      Hillman's Motion is a Tactical Ploy ................................................ 4

        B.      Hillman is Not a Current Client ....................................................... 5

        C.      Prior Representation of Minute Key Does Not Disqualify Cooley ....... 7

                1.      The Instant Patent Litigation is Not "Substantially Related" to
                        Cooley's Prior Corporate Work for Minute Key. ...................... 7

                2.      Cooley Did Not Obtain Confidential Information Related to
                        Minute Key That Could Be Used Against Hillman in the Instant
                        Action ................................................................................... 11

        D.      Disqualification is Not an Appropriate Remedy................................ 15

IV.     CONCLUSION........................................................................................... 15

**Table of Authorities**

**Page**

**Cases**

*Adaptix, Inc. v. Dell, Inc.*,
   No. 6:13cv437, 2014 WL 11730482 (E.D. Tex. Feb 12, 2014) ............................................12

*In re Am. Airlines*,
   972 F.2d 605 (5th Cir. 1992) .......................................................................................4, 7, 8, 9

*Bayou Pumps & Prods., Inc. v. Discflo Corp.*,
   No. 06-0962, 2006 U.S. Dist. LEXIS 90067 (W.D. La. Dec. 13, 2006) ..............................14

*Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*,
   9 F. Supp. 2d 572 (W.D.N.C. 1998) .....................................................................................15

*Classic Ink, Inc. v. Tampa Bay Rowdies*,
   No. 3:09-CV-784-L, 2010 U.S. Dist. LEXIS 75220 (N.D. Tex. July 23, 2010) ..............13, 14

*DataTreasury Corporation v. Wells Fargo & Company*,
   No. 2:06-CV-72 DF, 2009 WL 10679840 (E.D. Tex. Dec. 30, 2009) ...................................10

*Eastman Kodak Co. v. Sony Corp.*,
   Nos. 04-CV-6095, -6098, 2004 WL 2984297 (W.D.N.Y. Dec. 27, 2004).........................2, 15

*Eon Corp. IP Holdings LLC v. Flo TV Inc.*,
   No. 10-812-RGA, 2012 WL 4364244 (D. Del. Sept. 24, 2012).............................................10

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
   No. 2:15-CV-1202-WCB, 2016 WL 760909 (E.D. Tex. Feb 26, 2016) ................8, 11, 12, 13

*Evolutionary Intelligence, Inc. v. Facebook, Inc.*,
   Nos. 6:12cv784, -790, 2013 WL 12140485 (E.D. Tex. July 3, 2013).............................12, 14

*General Electric Co. v. Mitsubishi Heavy Industries Ltd.*,
   No. 3:10-cv-276-F, 2011 WL 13201855 (N.D. Tex. Sept. 12, 2011).......................................6

*Holcombe v. Quest Diagnostics, Inc.*,
   675 F. Supp. 2d 515 (E.D. Pa. 2009) .....................................................................................15

*M-I LLC v. Stelly*,
   No. 4:09–cv–1552, 2010 WL 2196281 (S.D. Tex. May 26, 2010) ..........................................9

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
   60 F. Supp. 3d 751 (W.D. Tex. 2014)....................................................................................15

**Table of Authorities**
(continued)

**Page**

*VECC, Inc. v. Bank of Nova Scotia,*
    222 F. Supp. 2d 717 (D.V.I. 2002) ..........................................................................................10

**Other Authorities**

MODEL RULES OF PROF'L CONDUCT
    r. 1.9 cmt. 3 ...............................................................................................................14
    r. 1.9(c)(1) .................................................................................................................4

E.D. TEXAS PATENT RULES
    3-2(b)....................................................................................................................13, 14

## I.   INTRODUCTION

Plaintiff The Hillman Group Inc.'s ("Hillman") Motion to Disqualify Cooley LLP ("Cooley") ("Motion"), counsel for Defendant KeyMe, Inc. ("KeyMe"), on the basis of its former representation of Minute Key is a purely tactical maneuver meant to deprive KeyMe of its chosen counsel and should be denied.  It is simply not the rule that, because Cooley previously represented Minute Key on various corporate issues, Cooley litigators are precluded from acting adverse to Minute Key's subsequent acquirer in a patent litigation.  Even if corporate attorney Noah Pittard had relevant confidential information by virtue of his former representation of Minute Key (which he does not) Hillman does not allege, nor could it, that Pittard ever shared any Minute Key information with Cooley's litigation team.  Indeed, Cooley has established an ethical wall that makes any such disclosure impossible.

The crux of Hillman's Motion is its oft-repeated misrepresentation that Pittard acted as Minute Key's "general counsel" or "in house counsel" and was thus exposed to every aspect of Minute Key's business, including its patents and prior patent disputes with KeyMe and Hillman. According to Hillman, Pittard's mere presence at Minute Key Board meetings made him privy to information that would give Cooley's patent litigation team an unfair advantage in the instant action.  This allegation is unequivocally false.  Pittard never acted as Minute Key's general counsel, is not a patent attorney, never represented Minute Key in any patent matter, and has no expertise in patent law or litigation.  Moreover, the Minute Key information Pittard allegedly was exposed to at Board meetings related to different patent claims, different entities, and different legal strategies than those at issue in this litigation.

But even if Pittard had received relevant confidential information during his representation of Minute Key, the extreme remedy of disqualification is inappropriate.  The Court can and should

order "more tailored measures" to balance the parties competing interests.  *Eastman Kodak Co. v. Sony Corp.*, Nos. 04-CV-6095, -6098, 2004 WL 2984297, at *6 (W.D.N.Y. Dec. 27, 2004).  Given the circumstances here, KeyMe respectfully submits that the more "tailored" measure of an ethical wall adequately protects the parties' interests and the integrity of the proceedings.  The Court should deny Hillman's Motion and allow KeyMe to defend itself using the counsel of its choice.

## II.   BACKGROUND

### A.   Cooley's Prior Representation of Minute Key

Minute Key first retained Cooley in 2008 to advise on a ███████████████████████. (Declaration of Noah Pittard ("Pittard Decl.") ¶ 4.)  Neither Cooley nor Pittard acted as Minute Key's "general counsel" or "in-house counsel," and Pittard never told Minute Key that he or Cooley was acting as such.  (*Id.* ¶ 5.)  Pittard advised Minute Key as outside counsel on ███████ ████████████ and attended board meetings.  (*Id.* ¶¶ 4-6.)  Pittard frequently attends his clients' board meetings and, in most cases, acts as secretary, as he did for Minute Key.  (*Id.* ¶¶ 6-7.)  At the same time Pittard attended Minute Key's board meetings, he attended board meetings for numerous other clients.  (*Id.* ¶ 6.)  Pittard is not a litigator and he has no expertise related to patents or patent litigation.  (*Id.* ¶¶ 3, 11.)  Cooley did not represent Minute Key in any patent action, and did not provide patent counseling or patent prosecution advice.  As Hillman concedes, Minute Key always hired *other* law firms, not Cooley, to represent it in patent actions.

Cooley's representation of Minute Key wound down following its acquisition by Hillman. Pittard advised Minute Key in the acquisition transaction which closed in August 2018.  (*Id.* ¶ 9.) His last work for Minute Key was in October 2018 and related to the transaction.  (*Id.* ¶ 12.)  He did not attend any board meetings following Hillman's acquisition of Minute Key; the last Minute Key board meeting he attended was in March 2018, and the last board call he attended was in April

2018.  (*Id.* ¶ 8.)  Pittard was not involved in any way with Minute Key's subsequent merger into Hillman in December 2018.  (*Id.* ¶ 9.)  In fact, Pittard was unaware that a merger had taken place until August 2019.  (*Id.*)

Following Minute Key's merger into Hillman in December 2018, Cooley performed only ▮▮ hours—in total—of work for Minute Key, all in January 2019.  (Declaration of Keith Berets ("Berets Decl.") ¶ 3.)  This work was on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (*Id.* ¶¶ 3-4.)  Hillman does not contend, nor could it, that this work relates in any way to the instant action.  Cooley has not performed legal work, of any kind, for Minute Key since January 2019.  (Pittard Decl. ¶ 13.)

**B.    The Instant Action Against Hillman**

Hillman is not a current or former client, and has never engaged Cooley for any legal work of any kind, including after its acquisition of and merger with Minute Key.  Cooley declined the only request for legal advice it has ever received from Hillman, in August 2019, explaining that Cooley could not provide legal advice to a non-client, and that although Cooley had "previously represented Minute Key" Hillman was not a client.  (Pittard Decl. ¶ 15.)  Hillman did not respond or dispute Pittard's statement in any way.  (*Id.*)  Hillman did not raise its purported concerns with Cooley patent litigators acting as counsel for KeyMe until two weeks after Cooley entered an appearance in this case, and failed to note any concerns at all on the parties' initial discovery call a week after Cooley's first appearance.  (*See* Declaration of Stephen Smith ("Smith Decl.") ¶ 2.)  In response to Hillman's concerns, Cooley established an ethical wall between the attorneys representing KeyMe in the instant action and all Cooley attorneys that previously represented Minute Key.  (Pittard Decl. ¶ 17, Smith Decl. ¶ 5.)  The attorneys representing KeyMe do not work in the same office as Pittard and have had no contact with the attorneys that formerly represented

3

Minute Key related to the substance of this litigation.  (Smith Decl. ¶¶ 3, 4; Pittard Decl. ¶ 17.)

## III.   ARGUMENT

### A.   Hillman's Motion is a Tactical Ploy

Hillman seeks a drastic remedy for a nonexistent problem.  Hillman does not allege that Cooley's litigators are in possession of any Hillman or Minute Key confidential information. Hillman's Motion concedes that there is no evidence whatsoever to support even the possibility that Cooley's patent litigators could actually *use* information from Pittard's prior corporate representation of Minute Key to Hillman's detriment.  Rather, Hillman relies exclusively on presumptions of imputed knowledge from a corporate lawyer representing Minute Key on corporate matters—presumptions that are rebutted by the facts.

Disqualification based on prior disclosure of confidential information is available only if there is a "reasonable probability" that the information can be *used* to the detriment of a former client.  *In re Am. Airlines*, 972 F.2d 605, 615 (5th Cir. 1992) (discussing TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(2) and 1.05); *see also* AM. BAR ASS'N MODEL RULES OF PROF'L CONDUCT r. 1.9(c)(1) (lawyers shall not "*use* information relating to the representation to the disadvantage of the former client." (emphasis added)).  Based on Hillman's own allegations, there is no danger of any actual harm to Hillman in the instant litigation.

Hillman alleges that Pittard was exposed to confidential information over the course of his prior representation of Minute Key as corporate counsel.  (Mot. at 2-5.)  Setting aside whether that information is substantially related or relevant to the instant patent dispute (it is not), Pittard never shared that information with Cooley's litigators (Pittard Decl. ¶ 17) and the KeyMe litigation team has never accessed and cannot access any such information (Smith Decl. ¶¶ 4, 5).  And Hillman does not allege otherwise.  It is not credible that Cooley's patent litigators could somehow obtain

4

an unfair advantage against Hillman in this litigation with information they do not possess. Hillman's motion is not meant to protect Minute Key's past disclosures of confidential information or to remove the appearance of impropriety, it is a purely tactical maneuver intended to force KeyMe to select new defense counsel against its wishes.

**B.      Hillman is Not a Current Client**

Cooley no longer represents Minute Key, and has not performed legal work for Minute Key in more than eight months.  (Pittard Decl. ¶ 13.)  Even if Cooley's former attorney-client relationship with Minute Key passed to Hillman by virtue of the acquisition or merger transaction, Hillman is not Cooley's current client, and the appropriate legal standard for the Motion is the test for conflicts with a *former* client.

Hillman does not dispute that Cooley is no longer performing work for Minute Key. However, Hillman argues that it is, nonetheless, a current client because the nature of Cooley's representation of Minute Key was to provide legal advice "on standby" and as needed, and representation of the same ongoing nature passed to Hillman when it acquired Minute Key. Hillman argues that this type of attorney-client relationship does not end, even when there is no ongoing work, and the original client no longer exists.  (Mot. at 7-9.)  The Court should reject Hillman's theory for three independent reasons.

***First***, even with respect to Minute Key while it existed, there is nothing in the record, other than Fagundo's self-serving characterizations of Cooley and Pittard as Minute Key's "general counsel" and "in-house counsel," to support the notion that Cooley was engaged to be "at the ready" to provide Minute Key with on-demand legal advice on any subject and at any time.  (Mot. at 9 (citing Fagundo Decl. ¶¶ 2-3; 5-7).)

***Second***, even if this "on demand" relationship existed with respect to Minute Key, there is

5

no evidence that such a relationship continued with Hillman after Minute Key was acquired, and ceased to exist.   Pittard advised Minute Key—adverse to Hillman—in the acquisition and continued providing advice to Minute Key, still a separate entity, related to the transaction until October 2018.  (Pittard Decl. ¶¶ 9-12.)  Pittard has not performed any legal work for Minute Key since October 2018, and has never performed legal work for Hillman.  (*Id.* ¶ 12.)  In fact, Pittard declined Hillman's request for legal advice in August 2019, explaining that Hillman was not a client.  (*Id.* ¶ 15.)  Hillman did not express disagreement or respond to Pittard's message. (*Id.*)

Since the transaction by which Minute Key ceased to exist as a separate entity and was merged into Hillman, Cooley performed only ███ hours of work on Minute Key's █████ ██████, that Cooley had helped Minute Key with beginning in 2016.  (Berets Decl. ¶ 3.)  The work was performed by Cooley partner Keith Berets, and an associate working under his direction. (*Id.*)  Berets had no knowledge, at the time he performed the work, that Minute Key had merged into Hillman and become a single entity.  (*Id.*)

***Third***, the Motion provides no legal support for Hillman's argument that an "on standby" attorney-client relationship passes automatically to a client's *acquirer*.  Hillman's only authority, *General Electric Co. v. Mitsubishi Heavy Industries Ltd.,* is inapposite because it does not involve a client with an "on standby" representation changing ownership, and ceasing to exist as a separate legal entity.  No. 3:10-cv-276-F, 2011 WL 13201855, at *7 (N.D. Tex. Sept. 12, 2011).  Further, the scope of the on-call relationship found to exist in *General Electric Co.* was significantly narrower than the purported unlimited "general counsel" role that Minute Key alleges Cooley occupied.  *See, id.* ("In the opinion of the Court, the purpose of Paul Weiss's employment by MHI was to be on standby to advise MHI regarding various, intermittent disputes *relating to contracts concerning its aircraft manufacturing business* as they arose.") (emphasis added).  Nothing in

6

*General Electric Co.* stands for the proposition that a sweeping "general counsel" representation may be implied, much less transferred, to a client's acquirer, without any formal agreement.

At no point during Cooley's representation of KeyMe (which began in August 2019) was Hillman a current client.  Minute Key is Cooley's former client, and the applicable standard is the substantial factor and confidential information test addressed below.

### C.    Prior Representation of Minute Key Does Not Disqualify Cooley

A lawyer may be adverse to a former client unless the new matter is substantially related to the prior representation or will involve the use of confidential information obtained in the prior representation.  *See In re Am. Airlines*, 972 F.2d at 615 (the rule, "thus on its face forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information *or* if the current matter is substantially related to the matters in which the lawyer has represented the former client.").  Neither substantial relationship nor use of confidential information provides a basis for disqualification here.

### 1.    The Instant Patent Litigation is Not "Substantially Related" to Cooley's Prior Corporate Work for Minute Key.

There is no substantial relationship between Cooley's previous work for Minute Key and the instant patent litigation.  The "substantial relationship" test is exacting.  "A substantial relationship exists when the prior representation concerns 'the particular practices and procedures which are the subject matter of [the] suit.'" *In re Am. Airlines*, 972 F.2d at 625 (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir. 1981)).  To establish a substantial relationship, the moving party must "'delineate[] with specificity the subject matters, issues and causes of action' common to prior and current representations." *Id.* at 614 (quoting *Duncan*, 646 F.2d at 1029).  The Court must then "engage[] in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.*

7

Here, Hillman has not met its burden to show that Cooley's prior representation of Minute Key substantially relates to the instant action.  Hillman paints a portrait of a prior representation so broad that seemingly any matter could "substantially relate" to Cooley's work.  But, Cooley and Pittard were not "general counsel" or "in-house" counsel for Minute Key.  (Pittard Decl. ¶¶ 4-5.)  Pittard is, and was at all relevant times, a Cooley attorney who provided legal advice as outside corporate counsel to Minute Key in accordance with his expertise in corporate finance and corporate governance.  (*Id.* ¶¶ 5, 9.)

Hillman argues that Pittard's previous representation of Minute Key, as to corporate matters, substantially relates to the instant patent litigation because Pittard was exposed to information related to Minute Key's patents and former patent actions at the Board meetings he attended.[1]  But, Pittard has no expertise with patents or patent litigation and could not and did not provide legal advice to Minute Key with respect to any of its patents or litigation.[2]  (*Id.* ¶¶ 10-11.)  In fact, Minute Key had separate outside counsel for each of the matters identified in the Motion

---

[1] Cooley has been not provided with unredacted versions of Fagundo Exs. 2, 4, 6, 8, 10, 13, 18, and 20, the board presentations allegedly containing relevant information that Mr. Pittard viewed.

[2] The only patent-related work Hillman alleges that Cooley performed for Minute Key, via patent attorney Wayne Stacy who left Cooley over three years ago in 2016, relates to ▮▮▮▮▮▮ Hillman's 2013 lawsuit against Minute Key alleging that Minute Key's '809 patent was invalid. (Pittard Decl. ¶ 16.)  Mr. Stacy was not Minute Key's counsel in that matter, Minute Key was represented by Jones Day.  (Fagundo Decl. ¶ 25.)  Mr. Stacy's role was minimal, and he billed only ▮▮ hours total over two months to Minute Key.  (Pittard Decl. ¶ 16.)  Moreover, the '809 patent is not at issue in the instant action.  Minute Key does not explain how the work of an attorney who has not been at Cooley for three years on ▮▮▮▮▮▮▮▮▮▮ on a different patent between Hillman and Minute Key—which are now the same entity—concerns the "subject matters, issues and causes of action" common to the instant litigation which was filed in June 2019.  *In re Am. Airlines*, 972 F.2d at 614.  And in any event, once again, Hillman does not even allege (nor could it) that Stacy ever communicated information about the Minute Key matter to the KeyMe litigation team.  *See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 760909, at *6-7 (E.D. Tex. Feb 26, 2016) (denying motion to disqualify based on general allegations that confidential information was disclosed in the absence of specific allegations).

and actually declined to engage Cooley on its patent matters.  (*See* Fagundo Decl. ¶ 13 (Jones Day represented Minute Key in 2015 KeyMe litigation); ¶ 22 (Nixon Peabody originally represented Minute Key in the 2013 patent litigation against Hillman); ¶ 25 ("Minute Key ultimately selected Jones Day" over Cooley to replace Nixon Peabody).)   Plaintiff alleges only that Pittard "participated" in discussions related to Minute Key's prior litigation against KeyMe and that he was "privy" to generalized information about Minute Key's patents and ongoing disputes.  (Mot. at 12-13.)

Further, the Fagundo Declaration does not supply evidence of what information Pittard was *actually* exposed to at the Board meetings he attended.  Even though Fagundo was present at each meeting, he is unable to attest in his declaration to what information was exchanged.  Instead, he repeats hypothetical statements about generalized topics he assumes "*would have*" been conveyed in Pittard's presence.  (*See, e.g.*, Fagundo Decl. ¶ 11 ("████████████████████████████ ███████████████████████████████) (emphasis added); ¶ 20 ██████████████ ████████████████████████████████████████████████████████ ████████ (emphasis added); ¶ 28 ███████████████████████████ █████████████████ (emphasis added); *see also* Fagundo Decl. ¶¶ 13-14, 18, 19, 22, 24, 27, 28.) Fagundo's vague descriptions of information that he speculates "would have" been discussed at meetings do not "delineate[] with specificity the subject matters, issues and causes of action" common to prior and current representations as required on a motion to disqualify. *In re Am. Airlines*, 972 F.2d at 625.  Courts have declined to find a substantial relationship under similar circumstances.  *See, e.g.*, *M-I LLC v. Stelly*, No. 4:09–cv–1552, 2010 WL 2196281, at *5-6 (S.D. Tex. May 26, 2010) (no substantial relationship between firm's prior representation, via corporate attorney acting as "primary corporate lawyer" for client that was later acquired, and trade

secrets/employment litigation in which the same firm acted as litigation counsel adverse to the company that acquired the prior client.)

Plaintiffs' authorities, *VECC, Inc.*, *DataTreasury*, and *EON Corp.* are not only inapposite, in two of the three cases, the motion to disqualify was actually *denied*.  (Mot. at 11-13.)  In *VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 722-23 (D.V.I. 2002), the Court found a substantial relationship but ultimately denied the motion for disqualification because it found that the conflict involved only a single attorney at a law firm and "imputed disqualification" of other attorneys was not "warranted."   Similarly, in *DataTreasury Corporation v. Wells Fargo & Company*, No. 2:06-CV-72 DF, 2009 WL 10679840 (E.D. Tex. Dec. 30, 2009), the court also refused to disqualify counsel, even after finding a substantial relationship existed.  *Id.* at *10 ("On balance, Plaintiff's concerns do not outweigh each party's right to choose its own counsel . . . .").  Moreover, the facts of *DataTreasury* are wholly distinguishable.  There, the conflict involved the very same attorney, not just imputed conflicts at the same firm, and the attorney had personally advised on a "negotiation  . . . regarding the patents in suit" and "gave legal advice related to the very patents in suit."  *Id.* at *8.  No such overlap exists here with Pittard's work for Minute Key.  In *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, No. 10-812-RGA, 2012 WL 4364244, at *4-5 (D. Del. Sept. 24, 2012), the motion to disqualify was successful, but in that case, Latham & Watkins' prior representation of EON was so "broad" that Latham attorneys appeared on the witness list for the case.  The Court ordered disqualification after considering at length whether an ethical wall would suffice because Latham's prior representation might come before the jury.  *Id.* at *5.  Here, there is no possibility that Cooley could be a witness in the action.

Hillman has not met its burden to establish that a substantial relationship exists between Cooley's prior Minute Key work, and the current litigation with Hillman.

### 2. Cooley Did Not Obtain Confidential Information Related to Minute Key That Could Be Used Against Hillman in the Instant Action

Hillman identifies four sources of potentially disqualifying information: (1) Minute Key's prior patent litigations; (2) Hillman's *inter partes* review ("IPR"); (3) prosecution of the '179 patent; and (4) Minute Key's product development, patent strategies, and competitive analysis. (Mot. at 12-14 (citing Fagundo Decl. ¶¶ 4-5, 11, 18-30).)   In each instance, the allegedly confidential information was provided to Pittard in the form of presentation slides during Board meetings between 2013 and 2017.  (Mot. at 2-5.)  Crucially, Hillman makes no allegation that Pittard provided the KeyMe attorneys with any information about Minute Key, much less information that could be used to potentially disadvantage Hillman.  In fact, Hillman's Motion does not articulate how the information identified *could ever* be used to its detriment in the instant action, even if it were disclosed.  Hillman relies on generalized assertions that do nothing more than show that the prior information provided to Pittard bears, at most, superficial relevance to actual issues in this litigation.

*First*, it is undisputed that Cooley was not counsel for Minute Key's prior litigations against either Hillman or KeyMe.  Minute Key used Jones Day and Nixon Peabody as its patent litigation counsel for its prior assertion actions.  Hillman was represented by Finnegan, the very same counsel which represents it in the instant litigation.  Moreover, Hillman does not allege that Pittard provided legal advice regarding any prior patent litigation matter.  Rather, Hillman argues that Pittard's participation in Board meetings gave him Minute Key's litigation playbook for the '446 patent and related patents not asserted in this litigation.  (Mot. at 2-3, 12-13.)  Yet, Hillman "provides no specifics as to the nature of those strategies or 'playbook,' or how such information might be used against" Hillman. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 760909, at *8 (E.D. Tex. Feb 26, 2016).  Moreover, the playbook would

11

have been *Minute Key's* "playbook," not Hillman's—as the two entities were entirely separate at the time and were each represented by their own counsel.  There is no allegation that Cooley has any strategic information about Hillman or their lawyers at Finnegan.  Moreover, none of the claims at issue in the prior litigations are asserted here, either because previously asserted claims of the '446 patent were invalidated in IPR or because they involved completely separate patents. Hillman's allegations cannot justify disqualification.  *Id.*; *see also Adaptix, Inc. v. Dell, Inc.*, No. 6:13cv437, 2014 WL 11730482, at *7-10 (E.D. Tex. Feb 12, 2014) (denying motion to disqualify due to lack of significant factual similarity between representations).

Hillman further argues that Pittard's presence during discussions regarding ██████ ████████████ ████████ provided him with confidential information relevant to the issues in this litigation. (Mot. at 12.) But the ████████████ ███████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████. See *Evolutionary Intelligence, Inc. v. Facebook, Inc.*, Nos. 6:12cv784, -790, 2013 WL 12140485, at *17 n.2 (E.D. Tex. July 3, 2013) ("Disclosing information for the purpose of it being shared with a third party is inherently non-confidential.") (citing *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454-55 (2002)).



**Second**, Hillman argues that Pittard's presence at Minute Key Board meetings where Hillman's IPR challenge to the '446 patent was discussed is disqualifying because "the same validity and strategy issues will likely be at issue in this case." (Mot. at 3.)  Again, Hillman relies on vague assertions and generalities regarding the allegedly detrimental "playbook" and what is "*likely*" to be at issue and ignores the actual relevance of the information to the instant litigation. Hillman's motion omits the critical fact that its prior IPR, adverse to Minute Key, was successful and invalidated numerous claims of the '446 patent. (Ex. A at 17.)  Hillman also ignores that

12

Finnegan represented Hillman in the prior IPR adverse to Minute Key and in this current litigation.

In addition, the "same validity issues" cannot be implicated in the instant action because the claims *invalidated* in Hillman's IPR are not—and by definition cannot be—asserted here.  As to supposed "strategy issues," Hillman again "provides no specifics as to the nature of those strategies. . . or how such information might be used against" Hillman. *Uropep*, 2016 WL 760909, at *8.  In fact, Minute Key employed different counsel to defend itself in the IPR in 2015, the strategy was unsuccessful, and the claims—and by extension the inventions—implicated by the IPR are not asserted in this litigation.  Further, Hillman fails to explain how *Minute Key's* strategy is relevant to Hillman, a separate company with its own legal team.  Hillman has not met its burden to show a reasonable probability that information about *Minute Key's* strategy could be used to *Hillman's* detriment.

**Third**, Hillman points to Pittard's attendance at a ████████ meeting as disqualifying because slides were presented that "████████████████████████████████████████ ████████████████████████████████████████████████ ████████ (Mot. at 5.)  As an initial matter, Hillman must turn over this information in discovery and thus it cannot be disqualifying.  *See* P.R. 3-2(b) (requiring production of "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention"); *see also Classic Ink, Inc. v. Tampa Bay Rowdies*, No. 3:09-CV-784-L, 2010 U.S. Dist. LEXIS 75220, at *10 (N.D. Tex. July 23, 2010) (denying motion to disqualify where confidential information was "already known to the parties through their discovery.")

Moreover, at the time of the ████████ meeting, the USPTO had already issued one Notice of Allowance regarding claims 1-18 of the '179 patent (Ex. B) and the '179 patent issued shortly thereafter in February 2018 without any changes to the allowed claims (D.I. 1-2).  As such,

the scope of the claims of the '179 patent had been fixed by the USPTO by the time Pittard received the allegedly disqualifying information. As for "information on related patents and applications," the board slides merely contain patent family trees—information which is readily available on the face of all issued patents and derivable from the USPTO's own website. (*See* Fagundo Decl., Ex. 20 at 40-42.)  This information is not confidential and cannot be used unfairly against Hillman in this litigation.

> > *Fourth* and finally, Hillman asserts that Pittard received information regarding Minute Key's product development ███████████████████.  (Mot. at 4-5.)  As with the origin of the '179 patent's inventions, information about Minute Key's product development must be turned over in discovery and cannot form the basis for disqualification. *See* P.R. 3-2(b)); *Classic Ink*, 2010 U.S. Dist. LEXIS 75220, at *10.  Further, ████████████████████████████ ███████████████████████████ which is what may be relevant to damages in the instant action.  Stale information—especially information related to a different entity—does not warrant disqualification. *See Bayou Pumps & Prods., Inc. v. Discflo Corp.*, No. 06-0962, 2006 U.S. Dist. LEXIS 90067, at *19-22 (W.D. La. Dec. 13, 2006) (denying motion to disqualify and noting that "the passage of time alone has diluted any possible advantage" gained from prior representation); Aᴍ. Bᴀʀ Ass'ɴ Moᴅᴇʟ Rᴜʟᴇs ᴏғ Pʀᴏғ'ʟ Coɴᴅᴜᴄᴛ r. 1.9 cmt. 3 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time"); *Evolutionary Intelligence*, 2013 WL 12140485, at *14 (denying motion to disqualify and noting "courts do not order disqualification when corporations employ tactical maneuvers to manufacture conflicts") (citing *Gould, Inc. v. Mitsui Mining & Melting Co.*, 738 F. Supp. 1121, 1127 (N.D. Ohio 1990)).

> > Pittard was not exposed to material confidential information, or information reasonably

likely to be used against Hillman in the current litigation.  Disqualification is not warranted here.

**D.     Disqualification is Not an Appropriate Remedy**

In addition to the absence of an actual conflict, disqualification is "inappropriate" here because it is a "severe" penalty and Cooley has established an ethical wall that adequately screens the attorneys performing work for KeyMe from those attorneys who previously worked on Minute Key matters.  *Holcombe v. Quest Diagnostics, Inc.*, 675 F. Supp. 2d 515, 520 (E.D. Pa. 2009); *see also*; *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 583 (W.D.N.C. 1998) ("Chinese Wall" at "large law firm" is an effective tool "to safeguard the integrity" of proceedings, and noting that attorneys involved work at different offices of the firm).  In the Fifth Circuit, the presumption of shared confidences among lawyers at the same firm is rebuttable, and the existence of an ethical wall may be considered.  *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 767 n.11 (W.D. Tex. 2014).  Courts have recognized that the prospect of conflicts arising as a result of merger activity requires a "balancing [of] various interests" and "[t]he result is that the courts are less likely to order disqualification and more likely to use other, more tailored measures to protect the interests of the public and the parties." *Eastman Kodak*, 2004 WL 2984297, at *6.

Here, Hillman acknowledges that Cooley has established an ethical screen, and there is no indication that any former Minute Key timekeeper has shared Minute Key information with the attorneys representing KeyMe.  (Smith Decl. ¶¶ 4, 5.)  There is thus no need for disqualification; the existing ethical screen protects Hillman's interests and the integrity of the proceedings.

**IV.     CONCLUSION**

For these reasons, disqualification of KeyMe's counsel at Cooley LLP is unwarranted. KeyMe respectfully requests that the Court deny Plaintiff's Motion.

Dated: October 2, 2019                          Respectfully submitted,

                                                _/s/ Deron R. Dacus_____
                                                Deron R. Dacus (Bar No. 00790553)
                                                The Dacus Firm, PC
                                                821 ESE Loop 323
                                                Suite 430
                                                Tyler, TX 75701
                                                Tel. 903.705.1177
                                                Fax 903.581.2543
                                                Email: ddacus@dacusfirm.com

                                                Michael G. Rhodes
                                                Cooley LLP
                                                101 California Street, 5th Floor
                                                San Francisco, CA 94111
                                                Tel: 415.693.2000
                                                Fax: 415.693.2222
                                                Email: rhodesmg@cooley.com

                                                Stephen R. Smith
                                                Cooley LLP
                                                1299 Pennsylvania Ave., NW, Suite 700
                                                Washington, DC 20004
                                                Tel: 202.842.7800
                                                Fax: 202.842.7899
                                                Email: stephen.smith@cooley.com

                                                *Attorneys for Defendant KeyMe, LLC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on this 2nd day of October, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Deron R. Dacus
Deron R. Dacus

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7)(A), I hereby certify that a Motion for Leave to Seal the foregoing document and accompanying attachments has been filed.

/s/ Deron R. Dacus
Deron R. Dacus