**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| THE HILLMAN GROUP, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NOS.  2:19-CV-00209-JRG |
| | § | 2:20-CV-00070-JRG |
| KEYME, LLC, | § | |
| | § | |
| *Defendant*. | § | |

<u>**ORDER ON PRETRIAL MOTIONS AND MOTIONS *IN LIMINE***</u>

The Court held a Pretrial Conference in the above-captioned matter on Tuesday, March 23, 2021 regarding pending pretrial motions and motions *in limine* ("MILs") filed by Plaintiff The Hillman Group, Inc. ("Plaintiff" or "Hillman") and KeyMe LLC ("Defendant" or "KeyMe") (collectively, the "Parties"). (Dkt. Nos. 171, 169, 170, 243, 244, 260, 261). This Order memorializes the Court's rulings on the aforementioned pretrial motions and MILs as announced from the bench into the record, including additional instructions that were given to the Parties. While this Order summarizes the Court's rulings as announced into the record during the pretrial hearing, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

## PRETRIAL MOTIONS

1.    **KeyMe's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 10,400,474 (Dkt. No. 169).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript, Dkt. No. 281, at 93:8–13).[1]

The Court **GRANTED** the motion as to literal infringement. The asserted claim of U.S. Patent No. 10,400,474 (the "'474 Patent") requires "a slot opening in the housing configured to receive only the shank of an existing key." The undisputed evidence, including evidence cited by Hillman's technical expert, Dr. Phinney, showed that the accused product (KeyMe's self-service key duplication kiosk) has a slot opening that is capable of receiving the "shank" of a key as well as the "shoulders" of a key. (Dkt. No. 169 at 5 ¶ 11; Dkt. No. 169-6 ¶ 144; Dkt. No. 178 at 4 ¶ 11). The undisputed evidence further showed that the shoulders of the inserted key are seen and imaged by the machine (and therefore received by the slot opening) 43% of the time. (Dkt. No. 178 at 7 ¶ 18; Dkt. No. 187 at 6). While shoulders are not a claimed limitation, the parties did not dispute that shoulders are not part of the shank. (Transcript at 28:25–30:13; 40:11–41:4). Having reviewed the specification of the '474 Patent, *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005), the Court agrees that a person having ordinary skill in the art would understand that shoulders, when present, are not a part of the shank. *See, e.g.*, 474 Patent figs. 1A–1C, 2A–2C; col. 19, lines 56–59 ("These images may show a location of the tip of the key, a profile of the shank, and a location of shoulders at a base of the key's head (if shoulders are present).").

Hillman argued that, since shoulders are *not* present in 57% of the images, KeyMe's kiosk receives "only the shank" at least some of the time. (Transcript at 41:4–17). Therefore, Hillman

---

[1] Unless otherwise indicated, all references herein to "Transcript" are to the transcript of the pretrial conference (Dkt. No. 281).

argued, KeyMe's kiosk literally infringes at least some of the time, and this does not change merely because the device is capable of non-infringing modes. (*Id.* at 39:22–40:10 (citing *Oyster Optics LLC v. Coriant Am.*, No. 2:16-cv-1302, 2018 WL 3067727, at *8 (E.D. Tex. Jun. 21, 2018)). The Court disagrees. The claims of the '474 Patent requires "a slot opening in the housing *configured* to receive only the shank of an existing key." The parties do not dispute that the slot opening in the housing of KeyMe's kiosk has a fixed configuration that does not change. (*Id.* at 45:24–46:10; 52:14–23). Since the slot opening in KeyMe's kiosk is capable of receiving the shoulders of a key (*i.e.*, more than the shank), the Court is persuaded that no reasonable jury (considering the plain and ordinary meaning of the limitation) could find that "a slot opening in the housing configured to receive only the shank of an existing key" is literally present in KeyMe's kiosk. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986) (summary judgment standard); *Phillips*, 415 F.3d at 1313–14 ("words of a claim 'are generally given their ordinary and customary meaning'" unless construed differently); *Southwall Techs, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."). Accordingly, the Court **GRANTED** KeyMe's motion for summary judgment as to literal infringement of the '474 Patent.

The Court **DENIED** the motion as to the doctrine of equivalents. The Court was not persuaded that the specific exclusion principle barred use of the doctrine of equivalents. The cases cited by KeyMe all involved patentees trying to re-capture structures fundamentally inconsistent with the claimed invention. *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc*, 242 F.3d 1337, 1347 (Fed. Cir. 2001) (proposed equivalent disparaged by patentee); *see also Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014) (proposed equivalent would undermine and contradict claim construction); *Zodiac Pool Care, Inc. v. Hoffinger Indus.*, 206 F.3d 1408, 1415

3

(Fed. Cir. 2000) (proposed equivalent would contravene "clear structural limitations" in the claim)  In contrast, the '474 Patentee has not disparaged acceptance of more than the shank. Although the claim language draws a difference between shank and head, it is silent on shoulders.

The issuance of the U.S. Patent No. 10,577,830 (the "'830 Patent"), a continuation of the '474 Patent, supports this result. The '830 Patent contains claims with similar limitations but without the word "only." *E.g.*, '830 Patent cl. 1 ("a slot opening in the housing configured to receive the shank of an existing first key. . . ."). This suggests that the invention described in the '474 Patent does not contain the type of disparagement or "clear structural limitations" that would necessitate closing the door on the doctrine of equivalents as a matter of law. Accordingly, the Court was persuaded that a genuine issue of material fact remains as to whether KeyMe's kiosk, which receives shank and shoulders, performs substantially the same function in substantially the same way to achieve the same result as the claimed apparatus. *Southwall*, 54 F.3d at 1579.

## 2.      KeyMe's Motions for Summary Judgment of No Willful Infringement (Dkt. Nos. 171, 243).

Both motions were **DENIED**. (Transcript at 93:14–18).

The Court was persuaded that KeyMe's motions leave unresolved genuine issues of material fact that are appropriately decided by a jury. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 255. Willfulness is a matter of culpability and is determined by considering the totality of the circumstances. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Gustafson, Inc. v. Intersystem Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). The Court disagrees with KeyMe's argument that objectively reasonable defenses (if established) would preclude willfulness as a matter of law. *See Halo*, 136 S. Ct. at 1932. Whether KeyMe's conduct constituted willful infringement is an issue of fact for the jury, as is whether KeyMe subjectively held a good-

faith belief in its non-infringement and invalidity defenses such that its conduct would not be deemed willful.

**3.      KeyMe's Motions to Strike Testimony of W. Todd Schoettelkotte (Dkt. Nos. 170, 244).** Both motions were **DENIED**. (Transcript at 93:19–21).

The Court was persuaded that Mr. Schoettelkotte's opinions met the threshold to survive exclusion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and the Federal Rules of Evidence. As Mr. Schoettelkotte explains in his report, much of his analysis of the *Georgia-Pacific* factors turns on Hillman and KeyMe being direct competitors in a two-competitor market. Mr. Schoettelkotte's conclusion that the competition factors would exert strong upward pressure on the ultimate royalty rate follows from his analysis, which is not so unreliable as to warrant exclusion. Mr. Schoettelkotte's apportionment analysis is not problematic merely because it is implicit rather than explicit. Mr. Schoettelkotte's reliance on the Duff & Phelps valuation report is not problematic because he does not adopt the report as his own comparable license analysis, but merely opines that the parties would consider it as a "data point" during a hypothetical negotiation. (*See, e.g.*, Dkt. No. 170-2 ¶ 113). Mr. Schoettelkotte's reliance on the Keyline agreement is also not problematic merely because it is not a bare patent license. These matters all go to weight rather than admissibility, and are best addressed by KeyMe through vigorous cross-examination and the presentation of competing evidence.

Additionally, Mr. Schoettelkotte's application of a common, non-cumulative royalty rate does not warrant excluding his testimony because there is a single accused product for all asserted claims and all asserted claims claim a key-making machine as a whole. *Cf. Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1271 (Fed. Cir. 2020) ("Hologic's damages expert explained to the jury that the same royalty rate he used in his damages calculation would apply to either the '183

patent or '348 patent, 'individually or the two patents collectively,' since they 'both cover the entire procedure and device respectively.'").

## MOTIONS *IN LIMINE*

It is **ORDERED** that the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following before the venire panel or the jury without prior leave of the Court:

## I.   PLAINTIFF'S MOTIONS *IN LIMINE* (Dkt. No. 261)

Hillman's MIL No. 1:  **Reference to IPR2015-01154.**

The MIL was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 99:6–23).

The Court granted this MIL with regard to references to terms such as "*inter partes* reviews," "IPR," "Patent Trial and Appeal Board," and "PTAB." The Court denied this MIL as to the substantive effect of the IPR proceedings. To the extent materials from the IPR are otherwise admissible into evidence and permissible before the jury (*e.g.*, as part of KeyMe's defense against willfulness or to impeach Hillman with a prior inconsistent statement), such materials are to be generically presented as statements to or decisions from the "Patent Office." The Court directed the parties to redact "PTAB," "IPR," and similar terms in all exhibits and demonstratives.

The Court clarified that prior inconsistent statements made by Hillman, its officers and directors, or its counsel in the IPR are available to impeach Hillman with appropriate redactions made. However, statements and declarations made by an expert witness retained by Hillman are not binding on or available to impeach Hillman, as such witnesses are independent experts rather than agents of Hillman.


Hillman's MIL No. 2:  **Reference to the S.D. Ohio Litigation Between Hillman and Minute Key.**

The MIL was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 106:7–109:3).

7

The parties are not precluded from presenting materials from prior litigation to the extent those materials are subtantially relevant and otherwise permissible before the jury (*e.g.*, testimony from a 30(b)(6) witness in a prior litigation, when offered as an admission or to impeach that party). However, while the substance of the material may be probative, the Court noted that the source of the material (*e.g.*, as from litigation in the "U.S. District Court for the Southern District of Ohio") is not relevant and has the potential to distract and confuse the jury. Therefore, to the extent such materials are proper in substance for presentation to the jury, they shall be presented generically, without reference to extraneous issues or matters. The parties shall not present such materials as coming from a specific prior lawsuit before a specific court or administrative body. The Court advised the parties to seek leave before presenting such materials for the avoidance of doubt.

Hillman's MIL No. 3: **Reference to Accused KeyMe Products Being Covered by KeyMe Patents.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 119:12–14). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that KeyMe will not present argument that the Accused Instrumentalities are covered by KeyMe patents." (*Id.*).

Hillman's MIL No. 4: **Reference to Pending Post-Grant Proceedings at the USPTO.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 119:15). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree not to present evidence or argument relating to any pending *inter partes* review." (*Id.*).

<u>Hillman's MIL No. 5</u>:  **Reference to Other Patent Litigations or "Litigiousness."**

This MIL was **GRANTED**. (Transcript at 119:16–120:10).

Neither party shall characterize the other as litigious or with terms of a similar nature. The Court clarified that KeyMe will not be permitted to argue that Hillman brought these suits as a competitive mechanism, rather than on the merits of the causes of action actually asserted.

The Court further clarified that the standstill agreement between KeyMe and Minute Key is not relevant to the issue of damages (or any other issue) because Hillman is not seeking damages for any period covered by the standstill agreement. Therefore, the parties are precluded from presenting evidence or argument relating to the standstill agreement.

The Court will not preclude reference to other litigations to the extent that evidence from other litigations are otherwise admissible into evidence or permissible for use before the jury (*e.g.*, testimony from a 30(b)(6) witness in a prior litigation, when offered as an admission or to impeach that party). However, such must be presented in accordance with the Court's guidance on those issues. Namely, such evidence should be presented in generic form, without extraneous reference to other courts, administrative agencies, or quasi-judicial bodies. The Court advised the parties to seek leave before presenting such materials for the avoidance of doubt.

<u>Hillman's MIL No. 6</u>:  **Reference to Hillman's Claim Construction Tutorial.**

This MIL was **GRANTED.** (Transcript at 120:11–21).

Neither party is permitted to present claim construction materials (including tutorials) in a jury trial. The parties are expected to comply with the Court's previous order as stated in the July 2, 2020 claim construction opinion:

> The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual

definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

(Dkt. No. 159).

<u>Hillman's MIL No. 7</u>:  **Reference to Irrelevant Business Ventures of Inventors of the Patent-in-Suit.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 120:22–23). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"Both parties agree not to refer to irrelevant business ventures, religious beliefs, or political beliefs of any past or present employee, officer, or agent of the other party." (*Id.*).

<u>Hillman's MIL No. 8</u>:  **Reference to Opinions of Counsel to Defend Against Hillman's Claim of Willful Infringement.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 120:22–23). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that KeyMe will not raise an opinion of counsel defense, and Hillman will not reference any alleged duty of KeyMe to raise an opinion of counsel defense, or reference KeyMe's alleged failure to raise an opinion of counsel defense." (*Id.*).

<u>Hillman's MIL No. 9</u>:  **Any Reference to Use of Jury Consultants or Jury Study Focus Groups.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 120:22–23). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"Both parties agree not to present argument, evidence, testimony, insinuation, reference, or assertion regarding the use of jury studies, jury consultants, focus group studies, mock trial teams, or shadow juries." (*Id.*).

**Hillman's MIL No. 10**:**Argument, Evidence, Testimony, Insinuation, Reference or Assertion that Code Cutting Is Outside the Scope of the Asserted Claims.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 120:22–23). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that KeyMe will not argue that code cutting is per se excluded from the scope of any asserted claim. However, the parties agree that KeyMe is permitted to otherwise introduce facts, evidence, and argument concerning the differences between Minute Key's kiosks and KeyMe's kiosks, including by describing Minute Key's trace-cutting operation and that KeyMe designed its systems specifically to overcome known limitations of trace-cutting." (*Id.*).

**Hillman's MIL No. 11**:**Any Comparisons Between the KeyMe Accused Instrumentalities and Hillman FastKey Kiosks.**

Insofar as KeyMe sought to introduce the 2013 Walmart letter into evidence, the Court deferred ruling on that matter until exhibit disputes. (Transcript at 119:2–10).

As to direct comparisons between KeyMe's products and Hillman products, the Court notes that such comparisons are not proper for infringement, invalidity, or any other issues in dispute in this trial, and have the potential to confuse the jury and distract from the merits of the case. Accordingly, the Court **GRANTS** this MIL as to such improper comparisons.

<u>Hillman's MIL No. 12</u>:**Any Reference that Finnegan (Hillman's Litigation Counsel) Prosecuted Any Patent for Hillman and/or Represented Hillman in Any Capacity Before this Litigation.**

This MIL was **GRANTED.** (Transcript at 116:6–8).

The fact that a particular statement came from attorneys for Hillman is relevant to weight, but which law firm represented Hillman is not relevant to any issue and has the potential to distract the jury from the merits. Such materials as presented should clearly indicate that they were issued by attorneys for Hillman, but should not indicate which firm issued the materials on Hillman's behalf. Accordingly, the name and letterhead of the Finnegan law firm and its lawyers should be redacted from such materials to indicate only that the materials were issued by attorneys for Hillman.

The Court also noted that the name of the firm that prosecuted the asserted patents is irrelevant for any issue. Therefore, the name of the Finnegan law firm should be redacted from all copies of the asserted patents to be used at trial, including exhibits, demonstratives, and copies of the asserted patents in the juror notebooks.

<u>Hillman's MIL No. 13</u>:**Reference to Any Unasserted Patent Claims and Hillman's Election of Patent Claims to Streamline this Litigation.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 120:25). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that KeyMe will not present any reference to Hillman's election to withdraw certain claims, and that Hillman will not present any reference to KeyMe's election to withdraw certain prior art references and/or combinations. The parties agree that it is permissible to reference un-asserted claims to the extent that asserted claims depend from them, including

claims 57 and 69 of the '446 patent (from which asserted claims 70-71 depend), and claim 7 of the

'813 patent (from which asserted claim 8 depends)." (*Id.*).

Hillman's MIL No. 14:**Any Reference to Discovery Obligations, Disputes, or Deficiencies.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 121:1). The Court granted this

MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that neither party will reference any discovery dispute between the

parties." (*Id.*).

Hillman's MIL No. 15:**Derogatory, Disparaging, and/or Pejorative References to Hillman or Minute Key.**

This MIL was **GRANTED.** (Transcript at 121:2–18).

Neither party is permitted to use derogatory, disparaging, or pejorative references or

statements during the trial. No party shall be characterized as a "bully," "intimidating," "brow-

beating," or anything of a similar nature. Likewise, no party shall be characterized as an

"underdog" or "little guy" or anything of a similar nature. Neither party shall characterize this

litigation as a "David and Goliath" scenario, "a stickup," "hold up," "shakedown," or anything of

a similar nature. The Court advised the parties that any such derogatory statements made in the

trial will be met with sanctions against the offending party.

The Court clarified, however, that this MIL does not preclude either party from fairly

presenting the facts in evidence, so long as such facts are not characterized in a denigrating way.

Hillman's MIL No. 16:**Reference to the Absence of Any Witness.**

This MIL was **GRANTED.** (Transcript at 123:13–25).

Neither party will be permitted to make empty-chair arguments. This includes both persons who do not appear at trial or who do not appear live but testify by deposition.

Insofar as either party has a factual and legal basis to believe that an absent witness is subject to the sole control of the other party, and whose absence is an intentional act worthy of an exception to this ruling, the party seeking to make such argument must seek leave of the Court in advance.

<u>Hillman's MIL No. 17</u>:**Reference to a 2013 Letter from Finnegan to Walmart.**

The Court deferred ruling on that matter until exhibit disputes. (Transcript at 119:2–10). To the extent the letter is pre-admitted, however, the Court instructed the parties to redact any references to the Finnegan law firm.

## II.     DEFENDANT'S MOTIONS *IN LIMINE* (Dkt. No. 260)

KeyMe's MIL No. 1:     **To preclude evidence or argument regarding allegations of safety or security concerns made against KeyMe's unaccused mobile application and RFID functionality.**

The MIL was **GRANTED**. (Transcript at 124:11–25).

KeyMe's app and RFID functionality (including security flaws therein) are not accused products in this case and are therefore irrelevant to any issue for the jury to decide. Should KeyMe open the door to such evidence, however, fairness would permit Hillman to respond with appropriate leave of Court.

KeyMe's MIL No. 2:     **To preclude evidence or argument regarding to previous class action litigation relating to KeyMe's alleged collection of biometric information.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 125:1–3). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that Hillman will not present evidence or arguments at trial relating to the *Rafidia v. KeyMe* class action litigation." (*Id.*).

KeyMe's MIL No. 3:     **To preclude evidence or argument regarding any allegations that former Minute Key employees who joined KeyMe violated any confidentiality obligations owed to Minute Key.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 125:1–3). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that neither party will present evidence or arguments relating to any alleged violation of confidentiality obligations by any current or former employees, including but not limited to Mr. Richard Caretsky." (*Id.*).

KeyMe's MIL No. 4:   **To preclude evidence or argument regarding any exclusion of the testimony of any testifying expert in any unrelated proceeding.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 125:1–3). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree not to present any evidence or arguments relating to any ruling, in any separate proceeding, that excluded or limited the testimony of any testifying expert." (*Id.*).


KeyMe's MIL No. 5:   **To preclude evidence, argument, or reference to the disqualification of previous counsel.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 125:1–3). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that neither party will present evidence or arguments at trial relating to the disqualification of KeyMe's prior counsel in this litigation." (*Id.*).


KeyMe's MIL No. 6:   **To preclude any characterization of KeyMe as having engaged in stealing, copying, pirating, or trespassing.**

This MIL was **GRANTED-IN-PART** and **DENIED-IN-PART.** (Transcript at 125:4–126:1)

Neither party shall characterize the other in pejorative terms, such as "thief," "pirate," "stealing," "ripped off," or "trespassing."

The Court noted, however, that copying is a legal concept and not merely a pejorative term. To the extent there is evidence to support an allegation of copying within the legal meaning of that term, neither side is prohibited from presenting such evidence.

<u>KeyMe's MIL No. 7</u>:  **To preclude reference to analogies as to the clear and convincing evidence standard in other legal situations.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 126:14). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that Hillman will not present analogies to the Texas Family Code with respect to the clear and convincing evidence standard." (*Id.*).


<u>KeyMe's MIL No. 8</u>:  **To preclude evidence, argument, or references concerning the religious or political beliefs of any party or witness .**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 126:14). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"Both parties agree not to refer to irrelevant business ventures, religious beliefs, or political beliefs of any past or present employee, officer, or agent of the other party." (*Id.*).


<u>KeyMe's MIL No. 9</u>:  **To preclude evidence, argument, or reference that defendant had a duty to obtain an opinion of counsel, or to the results of any such opinion.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 126:14). The Court granted this MIL in accordance with the language stipulated to by the parties (Dkt. No. 274).

"The parties agree that KeyMe will not raise an opinion of counsel defense, and Hillman will not reference any alleged duty of KeyMe to raise an opinion of counsel defense, or reference KeyMe's alleged failure to raise an opinion of counsel defense." (*Id.*).

<u>KeyMe's MIL No. 10</u>: **To preclude evidence, argument, or reference to the allegations that KeyMe (1) encouraged employees, friends, and family to submit positive reviews of the KeyMe app in the Apple or Android app stores or (2) updated the app to clear negative reviews.**

The MIL was **GRANTED**. (Transcript at 131:19–22).

KeyMe's app is not an accused product in this case and is therefore irrelevant to any issue for the jury to decide. Should KeyMe open the door to such evidence, however, fairness would permit Hillman to respond with appropriate leave of Court.

18

## OUTSTANDING EXHIBIT DISPUTES

The Court heard arguments from the parties as to disputed exhibits and issued rulings from the bench as to all exhibits except for the Sturges video (DX-0352) and the Walmart letter. After further consideration, it is **ORDERED** as follows:

## I.    STURGES VIDEO (DX-0352)

The Court **SUSTAINS** Hillman's objections and will not pre-admit the Sturges video (DX-0352) as an exhibit. The Court is of the opinion that the Sturges video, which demonstrates the Minute Key kiosks, invites an improper comparison between Hillman's products and KeyMe's products. Hillman's products are not on trial. The only proper comparison is between KeyMe's products and the language of the asserted claims. Although the Minute Key 1.5 kiosk is asserted system prior art, the Sturges video is not itself the asserted system but is merely a demonstration. As such, any probative value in the Sturges video is substantially outweighed by the risk of unfair prejudice, distraction, and confusion of the issues.

At most, the Sturges video could be a proper demonstrative for Dr. Doermann's direct testimony if muted and shown alongside narrative testimony that is consistent with Dr. Doermann's report (for example, to accompany opinions on the Minute Key 1.5 system prior art). Without knowing the content and context of its use, however, the Court cannot pre-judge the appropriateness of the Sturges video as a demonstrative. Accordingly, should KeyMe wish to use the Sturges video as a demonstrative for Dr. Doermann, KeyMe must disclose the parts of the video it wishes to use to Hillman in accordance with the normal process for disclosing demonstratives. The Court will hear objections to such use of the Sturges video in accordance with the normal process for disputing demonstratives.

## II.    WALMART LETTER

The Court **SUSTAINS** Hillman's objections and will not pre-admit the Walmart letter as an exhibit. The Court is not persuaded that the Walmart letter is probative on any issue the jury is asked to determine. The Walmart letter—a ten-page memorandum addressing issues such as infringement, invalidity, and claim construction—addresses patents that are not asserted and products that are not accused in this suit. It is therefore not relevant to the issues in this case. Moreover, since the patents and products discussed in the Walmart letter are similar to those in this case, the risk of confusing the jury is particularly grave.

As willfulness and good faith turn on the defendant's subjective state of mind, the Court is not persuaded that a letter from Hillman's counsel to Walmart—that KeyMe never saw—is relevant to those issues either.

To the extent the Walmart letter contains prior inconsistent statements of Hillman's, the Court will not prohibit KeyMe from using the Walmart letter for impeachment. However, KeyMe must limit its use of the letter as is necessary for such impeachment. If used, the Walmart letter should be appropriately redacted in accordance with the Court's orders *in limine*. The Court advises KeyMe, for the avoidance of doubt, to seek leave before attempting impeachment using nay probative portion of the Walmart letter and employing appropriate redactions.

## <u>ADDITIONAL RULINGS AND INSTRUCTIONS</u>

The Court took up several additional matters and issued rulings on the same. In accordance with the Court's rulings from the bench, it is **ORDERED** as follows:

## I.   **DISPUTED PRIOR ART COMBINATIONS**

The Court directed the parties to file supplemental briefs on the disputed prior art combinations. Such supplemental briefs are not to exceed five (5) pages excluding exhibits and must be filed no later than 5:00 p.m. CST on Thursday, March 26, 2021. (Transcript at 200:15–20).

Having considered the supplemental briefing (Dkt. Nos. 278, 279), the Court now **OVERRULES** Hillman's objections to the combinations of Freeman, Barber, and Almblad (excluding Wills) and Freeman, Barber, Almblad, and Ross (excluding Wills). Dr. Sturges (now substituted with Dr. Doermann) opined that "[a] person of ordinary skill would have been motivated to combine Freeman, Barber, Almblad, and Wills because a person of ordinary skill would have naturally looked to combine Freeman with features from key duplicating machines, vending machines, and ATM machines, and all four references are in the field of key duplication and vending machines." (Sturges Report, Dkt. No. 278-2 ¶ 186). Like Freeman and Almblad, Wills is a key duplication machine. Dr. Sturges cites to a passage from Freeman—not Wills—as providing a motivation to combine these technologies. The Court is not persuaded that Wills discloses the sole motivation to combine the remaining references.

As to claim elements, those references are cited as rendering obvious independent claim 57, from which asserted claims 70 and 71 depend. The only element in claim 57 that Wills is cited for is a "touch screen," which Wills expressly teaches in the context of a key duplication machine. (*Id.* ¶ 208). However, in the same paragraph (and even prior to the mention of Wills), Dr. Sturges

opines that "[t]o replace the screen of Freeman 796 with a touch screen would have been obvious," citing testimony of inventor Daniel Freeman. Accordingly, Dr. Sturges did opine on a combination that discloses a touch screen without Wills. Further citation of Wills in Dr. Sturges's report relates to independent claim 83, which is no longer asserted by Hillman. (*Id.* ¶¶ 216, 334).

Hillman cannot feign surprise at the combination of Freeman, Barber, and Almblad (without Wills) because that very combination was asserted by Hillman against independent claim 57 in its own IPR petition filed by its current trial counsel in 2015. (*Id.* ¶ 77 "Ground 3"; *see also* Petition for *Inter Partes* Review, IPR2015-01154, Dkt. No. 171-6 at 34 ("Independent Claim 57 Is Obvious in View of Freeman, Barber, and Almblad")). Accordingly, the Court **OVERRULES** Hillman's objection and will permit KeyMe to present these combinations through the testimony of Dr. Doermann insofar as the same is supported by Dr. Sturges's report, as adopted.

## II.      STIPULATIONS

The parties stipulated and agreed that the damages period in this case begins February 24, 2019 (rather than September 24, 2019, as erroneously stated in the joint pretrial order). The Court directed the parties to file any further stipulations or corrections on the docket. (Transcript at 201:18–202:4).

## III.     NOTICE OF "WILL CALL" WITNESSES

The Court **OVERRULED** Hillman's objection to joint pretrial order and its proposal that notice be given five days prior to moving a witnesses from the "may call" list to the "will call" list. The Court was persuaded that the default deadlines in the joint pretrial order to give notice of "will call" witnesses should stand. (Transcript at 205:13–16).

**So Ordered this**

**Mar 30, 2021**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE